UNITED STATES of America, Plaintiff-Appellee,

v.

Loleta ALLEN-BROWN, Defendant-Appellant.

No. 99-13688.

United States Court of Appeals,

Eleventh Circuit.

March 9, 2001.

Appeal from the United States District Court for the Southern District of Florida. (No. 99-06044-CR-WJZ), William J. Zloch, Chief Judge.

Before EDMONDSON and MARCUS, Circuit Judges, and RESTANI[*], Judge.

RESTANI, Judge:

Appellant, Loleta Allen-Brown, seeks reversal of her conviction for importing cocaine and possession with intent to distribute. Allen-Brown alleges that *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), does not apply in this case or that it was applied in an erroneous manner by the trial court. We hold that the trial court properly inquired into the defense's utilization of peremptory challenges and that *Batson* applies to race-based peremptory challenges made for the purposes of achieving a more diverse jury.

*FACTS*

1.  *Course of Proceedings and Dispositions in the Court Below.*

On March 11, 1999, a federal grand jury in the Southern District of Florida returned a two-count indictment charging appellant Loleta Allen-Brown with importation of cocaine, in violation of 21 U.S.C. § 952(a) (1994) and 18 U.S.C. § 2 (Count I), and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count II). The case proceeded to trial where a jury returned a verdict finding Allen-Brown guilty as charged.

2.  *Facts Pertaining to the Jury Selection Process.*

Following initial voir dire of thirteen seated prospective jurors, the government raised two challenges for cause. Over defense counsel's objection, the district court excused one of the jurors, who was black, for cause; the government then exercised a peremptory challenge to excuse the other, who was white. Jury questionnaires indicate that of the eleven remaining seated jurors, ten were white. The defense then attempted

---

[*]Honorable Jane A. Restani, Judge of the U.S. Court of International Trade, sitting by designation.

to remove six white prospective jurors using peremptory challenges. Uncalled in the venire were ten white and eight black prospective jurors. At this point, the prosecutor raised a challenge pursuant to *Batson,* and the district court requested that defense counsel offer race-neutral reasons for his peremptory challenges. Defense counsel stated that he wanted to excuse two jurors because they had served on other juries; another three jurors because they had indicated in voir dire that they would prefer to hear the defendant's testimony; and a sixth juror for "no particular reason." R58 at 53-57.

Defense counsel denied that his six peremptory strikes of white jurors was improperly racially motivated. He stated:

> Judge, we have predominantly Caucasian and we have no chance. We have the opportunity for peremptory challenges and that's what we are doing. It is not based on race but just what we have been presented here.

R58 at 55.[1]

The district court permitted the peremptory challenges as to three of the six prospective white jurors whom the defense had attempted to strike. Defense counsel objected, stating:

> Judge, over the defense objection. Judge, we have predominantly Caucasians and we have no choice in this matter, Judge.

R58 at 59.

After new jurors were seated to replace those who had been dismissed, defense counsel attempted to use peremptory challenges to exclude two of them—an African-American female (who was employed by the Department of Corrections) and a white male, Robert Mei. The prosecutor then requested that the court solicit race-neutral reasons for defense counsel's exclusion of Juror Mei. Defense counsel responded:

> Judge, we have every right to exclude on peremptory challenges individuals that we don't feel are, or we are not comfortable. I don't think I am required to give a reason. There is no pattern. I have excluded an African-American.

> Judge, what this Government is saying is I cannot exclude anybody. That is what they are saying, and I don't believe I am required to give a reason at this point.

R58 at 73.

The court understood defense counsel's comments at the earlier sidebar as a concession that he was attempting to exclude whites from the jury.

> You basically in a way have conceded the last time at sidebar that that is what you were attempting to do and that is inappropriate, to base a peremptory challenge strictly on race....

---

[1]Citations to the record are indicated by an "R" followed immediately by the docket exhibit number. The number following "at" refers to the page number.

R58 at 74.

> Defense counsel responded:
>
> Judge, for the record, I did not indicate I was excluding anybody based on race. The panel presented before me had one African-American. I had no choice in excusing anybody. If what the Government is saying is that if I am not allowed to exclude—if I want to exclude anybody it must be limited to African-American. And, Judge, I will not give a reason.
>
> If Your Honor wants to rule in the Government's favor that is fine, Judge, over my objection, but I have no choice and at this point. I would challenge the panel as not being representative of the community.

R58 at 74-75.

The district court sustained the government's objection to the use of the peremptory challenge as to Mr. Mei. A replacement juror was called, and trial commenced without further challenge.

## STANDARDS OF REVIEW

The application of the equal protection principles enunciated in *Batson* to the exclusion of whites from a jury is an issue of constitutional law that is subject to plenary review. *United States v. Gilbert,* 130 F.3d 1458, 1461 (11th Cir.1997), *cert. denied,* 523 U.S. 1088, 118 S.Ct. 1547, 140 L.Ed.2d 695 (1998) ("Issues of constitutional law and statutory interpretation are subject to plenary review.").

Courts reviewing the resolution of a *Batson* challenge give " 'great deference to a district court's finding as to the existence of a *prima facie* case.' " *Cent. Ala. Fair Housing Ctr., Inc. v. Lowder Realty Co.,* 236 F.3d 629, 635-36 (11th Cir.2000) (quoting *United States v. Stewart,* 65 F.3d 918, 923 (11th Cir.1995), *cert. denied,* 516 U.S. 1134, 116 S.Ct. 958, 133 L.Ed.2d 881 (1996)). *De novo* review is inappropriate. *See Stewart,* 65 F.3d at 923 (citing *United States v. Moore,* 895 F.2d 484, 486 (8th Cir.1990)). A district court's finding as to why a juror is excused is an issue of fact, and as such, it will not be disturbed on appeal "unless it is clearly erroneous or appears to have been guided by improper principles of law." *United States v. Williams,* 936 F.2d 1243, 1246 (11th Cir.1991), *cert. denied,* 503 U.S. 912, 112 S.Ct. 1279, 117 L.Ed.2d 504 (1992).

## DISCUSSION

*Batson* holds that "by denying a person participation in jury service on account of his race, the State unconstitutionally discriminate[s] against the excluded juror." 476 U.S. at 87, 106 S.Ct. 1712 (citation omitted). Although the peremptory challenges at issue in *Batson* were made by a government prosecutor against African-American jurors, by its terms *Batson* is not limited to members of racial minorities. It applies to anyone who is excluded from jury participation "on account of his race." *Id.* Since *Batson,* the Court has

reaffirmed the central meaning of *Batson* in holding that while "[a]n individual juror does not have a right to sit on any particular petit jury, ... he or she does possess the right not to be excluded from one on account of race." *Powers v. Ohio,* 499 U.S. 400, 409, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). *See also Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 618, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) ("a prosecutor's race-based peremptory challenge violates the equal protection rights of those excluded from jury service"). In *Georgia v. McCollum,* 505 U.S. 42, 48, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), in which a criminal defendant exercised the challenges at issue, the court stated, "[D]enying a person participation in jury service on account of his race unconstitutionally discriminates against the excluded juror." As we stated in *Stewart,* 65 F.3d at 923, "A defendant's misuse of the power of the court to deny a citizen her right to participate on a jury because of race is as reprehensible as a prosecutor's."

The *Batson* three-step procedure for evaluating an objection to a peremptory challenge is as follows: (1) the objector must make a *prima facie* showing that the peremptory challenge is exercised on the basis of race; (2) the burden then shifts to the challenger to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the objector has carried its burden of proving purposeful discrimination. *See Lowder Realty,* 236 F.3d at 635-36 (citing *Batson,* 476 U.S. at 96-98, 106 S.Ct. 1712).

Plaintiff alleges that there was no *prima facie* showing of racial discrimination. "No party challenging the opposing party's use of a peremptory strike ... is entitled to an explanation for that strike ... unless and until a *prima facie* showing of racial discrimination is made." *Stewart,* 65 F.3d at 925. In *Stewart,* citing *Batson* and its progeny, we reaffirmed that a district court cannot ignore the *prima facie* showing requirement, since to do so "would be to ignore the Supreme Court's repeated descriptions of that requirement as an integral part of any *Batson* analysis." *Id. See also Lowder Realty,* 236 F.3d at 635-36 (" '[T]he establishment of a *prima facie* case is an absolute precondition to further inquiry into the motivation behind the challenged strike.' "). We further quoted *Batson*'s requirement that in order to determine whether a *prima facie* case has been established,

> the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the [party's] questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative.

*Id.* (quoting *Batson,* 476 U.S. at 96-97, 106 S.Ct. 1712).

Applying the highly deferential standard of review required by our precedent, *see Stewart,* 65 F.3d at 923, we find the trial court did not abuse its discretion in moving to the second step of the *Batson* analysis. Although in a vacuum the first six defense challenges might have caused no alarm, the district court was able to assess all of the circumstances, such as the racial composition of the pool of remaining potential jurors, the race and ethnicity of the defendant, and the type of crime charged. *Cf. Lowder Realty,* 236 F.3d at 636-37 (finding challenge to jurors of particular race, without further contextual evidence, insufficient to create inference of racial discrimination). The trial judge did not elaborate on the reasons for his suspicion that the Constitutional rights of the prospective jurors potentially excluded from the jury on the basis of race were being violated. The totality of the circumstances, however, was sufficient to allow the district court to conclude that the first *Batson* step was met. The "*prima facie*" requirement of *Batson* is not simply a limit on the court's intrusion into counsel's thought processes; it also compels the trial court to act if it has a reasonable suspicion that Constitutional rights are being violated in its presence.

Assuming *arguendo* that the trial court erred in its assessment of whether a *prima facie* case of discriminatory jury selection was made, appellant is not entitled to a new trial. The district court found that defense counsel's statements *on their face* demonstrated a prohibited racial motive. The trial court is not permitted to ignore such statements, nor are we.

*Stewart* is no bar to this result. Had the trial court arrived at its factual conclusion that peremptory strikes were being made on the basis of race, simply because of insufficient neutral justification as to particular jurors, our statements in *Stewart* as to the *prima facie* requirement would apply. In such a case an inference is drawn from counsel's explanations of its challenges. The inference may be incorrect and the Constitutional rights at issue may in actuality be safe. In this case, however, the trial court found that defendant's counsel conceded that his goal in striking the white jurors was to achieve a more racially diverse jury. Appellant apparently draws the same conclusion from defense counsel's statement that defendant had no chance with a white jury and that that jury did not reflect the community. *See* Appellant's Br. at 17. The district court reasonably concluded from defense counsel's own characterization of the overall defense plan and its objections to a predominantly white jury that the Constitutional rights of the jurors were at stake.[2] *See*

---

[2]This is not to say the objective of excluding jurors of a particular race in order to obtain a racially diverse jury is fatal if combined with a non-race based motivation. *See United States v. Tokars,* 95 F.3d 1520, 1533 (11th Cir.1996), *cert. denied,* 520 U.S. 1151, 117 S.Ct. 1328, 137 L.Ed.2d 489 (1997); *Wallace v. Morrison,* 87 F.3d 1271, 1274 (11th Cir.), *cert. denied,* 519 U.S. 1044, 117 S.Ct. 616, 136 L.Ed.2d 540 (1996). In this case, however, counsel did not attempt to establish that the jurors would have

R58 at 74.

This brings us to the final issue of whether race-based peremptory challenges are permissible, if exercised by a criminal defendant to obtain a racially diverse jury. The Constitutional right at issue here is the potential juror's right not to be excluded on the basis of race. As indicated, the rights of jurors do not depend on which party to the case may assist in violating them. The jurors' rights are grounded in the Equal Protection Clause. *See Batson,* 476 U.S. at 85-89, 106 S.Ct. 1712. Under Supreme Court jurisprudence, race-based treatment is subject to strict scrutiny under the Equal Protection Clause. *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 235-37, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (5-4 decision); *Richmond v. J.A. Croson Co.,* 488 U.S. 469, 493-94, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) (plurality opinion). The standard of review under the Equal Protection Clause "is not dependent on the race of those burdened or benefited by a particular classification." *Croson,* 488 U.S. at 494, 109 S.Ct. 706 (plurality opinion). The Equal Protection Clause contains a principle of "consistency" that recognizes that "any individual suffers an injury when he or she is disadvantaged by the government because of his or her race, whatever that race may be." *Adarand,* 515 U.S. at 230, 115 S.Ct. 2097.

There is no compelling justification for race-based discrimination here that satisfies the strict scrutiny standards. Appellant does not claim that the Sixth Amendment is implicated because a fair cross-section of the community was not made available for jury selection. *Cf.* 28 U.S.C. § 1861 ("It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community...."). Moreover, appellant has no fundamental federal right to exercise challenges to particular jurors free from judicial examination. On the contrary, such judicial examination is essential to ensure the Constitutional rights of persons to be free of exclusion from jury service based on race. Finally, the number of peremptory challenges allowed is subject to alteration simply by amending the Federal Rules. *See* Fed.R.Civ.P. 47; Fed.R.Crim.P. 24. However important fully peremptory challenges may be to trial counsel, the right to exercise them is neither immutable nor unconditional. *Cf. McCollum,* 505 U.S. at 57, 112 S.Ct. 2348 ("[P]eremptory challenges are not constitutionally protected fundamental rights; rather, they are but one state-created means to the constitutional end of an impartial jury and a fair trial.")

Accordingly, we find no error or abuse in the trial court's scrutiny of defendant's peremptory

been challenged for non-race based motives, as well.

challenges, nor in its grant of the government's objections to some of the challenges.

The judgment of the district court is

*AFFIRMED.*