[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11734
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 9, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-60206-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARREL PENDERGRASS,
AUDRA MCLEAN,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(January 9, 2009)

Before ANDERSON, CARNES, and MARCUS, Circuit Judges.

PER CURIAM:

Darrel Pendergrass and Audra McLean appeal their convictions for conspiracy to commit access device fraud, in violation of 18 U.S.C. § 371, and access device fraud, in violation of 18 U.S.C. § 1029(a)(2). Both defendants contend that there was insufficient evidence to support their convictions. Pendergrass makes two additional arguments. The first one is that the district court violated Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), by not considering whether the prosecution had a race-neutral justification for its peremptory challenges to two black potential jurors. The second one is that the district court erred by admitting irrelevant evidence. We affirm the convictions.

## I.

This is a credit card fraud case. The fraud began with Alrick Rickards, who stole credit card information and then fraudulently encoded that information onto the magnetic strips of other credit cards. He gave those credit cards to Kerrick Young and Courtney Singh and paid them to use the cards to buy electronics.

McLean and Pendergrass worked as cashiers in the electronics department at Wal-Mart. Young and Singh shopped at that Wal-Mart. A lot. In fact, they made at least 151 purchases from the electronics department over the course of approximately two and half months. Those purchases totaled more than $70,000. Young and Singh brought several credit cards with them and always checked out

with either McLean or Pendergrass. The credit cards were declined frequently. When a card was declined McLean or Pendergrass would sometimes attempt to run the card through another card reader. If that did not work, they would simply accept another card from Young or Singh. Sometimes nine cards would be swiped before the transaction was finally approved. At some point, Pendergrass and McLean asked Young and Singh to purchase electronics for them. In a "hushed tone," Pendergrass asked for a video game console; McLean wanted a television. Young and Singh complied so that Pendergrass and McLean would continue to go along with the scheme.

The high rate of declined credit cards eventually raised suspicion. An investigation uncovered the scheme, and Rickards, Young, Singh, McLean, and Pendergrass were indicted for access device fraud and conspiracy to commit access device fraud.

**II.**

We begin with the issue of the sufficiency of the evidence, which both McLean and Pendergrass raise. We review de novo the sufficiency of the evidence to support a conviction, but "view[] the evidence in the light most favorable to the government and draw[] all reasonable inferences and credibility choices in favor of the jury's verdict." United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir.

3

2000) (citation omitted).

For a defendant to be convicted of conspiracy to commit access device[1] fraud under 18 U.S.C. § 371, the government must prove (1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement. See United States v. Ellington, 348 F.3d 984, 989–90 (11th Cir. 2003). To establish for access device fraud, the government must prove that the defendant (1) knowingly, with the intent to defraud; (2) used one or more unauthorized access devices during any one-year period; (3) to obtain anything of value aggregating $1000 or more in that period. See 18 U.S.C. § 1029(a)(2).

Pendergrass and McLean contend that there is insufficient evidence to establish that they knowingly and voluntarily participated in the conspiracy because they were never told that the purchases were fraudulent. That argument fails because participation in a conspiracy may be established by circumstantial evidence and "a common scheme or plan may be inferred from the conduct of the participants or from other circumstances." United States v. Diaz, 190 F.3d 1247,

---

[1]An access device is "any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)." 18 U.S.C. § 1029(e)(1).

1254 (11th Cir. 1999). The government need only prove that the defendant knew the general nature and scope of the conspiracy. United States v. Anderson, 326 F.3d 1319, 1329 (11th Cir. 2003).

Here, Singh testified for the government that Pendergrass and McLean allowed he and Young to purchase through their check out lines more than $70,000 worth of electronics in 151 separate transactions and that many of those purchases were of the same high-ticket video game consoles and computers. Singh also recounted how Pendergrass and McLean allowed he and Young to use multiple credit cards, and when some of the credit cards were declined (as they frequently were), they would simply accept a different card. Singh told how both Pendergrass and McLean had asked he and Young to buy them things in return for their continued cooperation— McLean got a television; Pendergrass got a video game console. Viewed in a light most favorable to the government, Singh's testimony would allow a reasonable factfinder to conclude that Pendergrass and McLean knowingly and voluntarily participated in the conspiracy.

Pendergrass's contention that the evidence is insufficient to sustain his conviction for access device fraud also fails. He argues that the government did not present any evidence of stolen property connected to Singh or Young, much less to him. Singh's testimony that he had purchased thousands of dollars worth of

5

electronics from Wal-Mart using fraudulent credit cards knocks out that argument. We therefore conclude that there was sufficient evidence to support the convictions.

**III.**

Pendergrass also contends that the district court violated Batson v. Kentucky by determining whether the prosecution had a race-neutral reason for its peremptory challenges of two black potential jurors. See Batson, 476 U.S. at 86, 106 S. Ct. at 1717. In Batson the Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection . . . ." Id. We give deference "to a district court's finding as to the existence of a prima facie case." United States v. Allen-Brown, 243 F.3d 1293, 1296–97 (11th Cir. 2001) (internal quotation marks and citations omitted).

To prevail on a claim of race discrimination, the defendant first must make a prima facie showing that the government has stricken potential jurors based on their race. See Batson, 476 U.S. at 96, 106 S. Ct. at 1723. To establish a prima facie case, the defendant must show facts and other relevant circumstances sufficient to "raise an inference" that the prosecutor exercised its peremptory challenges to exclude prospective jurors based on their race. Id. at 96, 106 S. Ct. at 1723. "In deciding whether the defendant has made the requisite showing, the trial

6

court should consider all relevant circumstances." Id. at 96–97, 106 S. Ct. at 1723.

Here, the district court did not err in concluding that Pendergrass had failed to demonstrate a prima facie case of racial discrimination. The government used four peremptory challenges, two against black venire members and two against non-black ones. Two black venire members were put on the jury, and the government had one or more unused strikes left. Those circumstances do not indicate a pattern of race discrimination nor do they give rise to an inference of racial discrimination. See id. Pendergrass offers no additional support for his contention that the government exercised its peremptory challenges based on race.

**IV.**

Finally, Pendergrass contends that the district court abused its discretion by admitting 151 cash-register receipts from Wal-Mart's electronics department as evidence that fraudulent transactions occurred. The admissibility of evidence is reviewed only for abuse of discretion. See United States v. Desero, 518 F.3d 1250, 1254 (11th Cir. 2008).

Pendergrass contends that the receipts were irrelevant because the government failed to connect those receipts to the conduct alleged in the indictment. Further, he contends that admitting the receipts was highly prejudicial because they showed a high frequency of declined cards. The cash-register

receipts were relevant because they did connect Pendergrass to the fraudulent purchases made by Singh and Young; they showed that those purchases were made through the register he was operating. They corroborated Singh's testimony. The district court has broad discretion to decide evidentiary issues, see United States v. Anderson, 872 F.2d 1508, 1515 (11th Cir. 1989), and that discretion was not abused here. Accordingly, Pendergrass' contentions under Federal Rules of Evidence 401, 402, and 403 fail.

**AFFIRMED.**