[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11305
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 10, 2010
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-00269-TWT-RGV-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARKISHA BURKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 10, 2010)

Before EDMONDSON, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Markisha Burks appeals her convictions and sentences for mail fraud, wire fraud, making false statements to a Department of the United States, and theft from the United States.  On appeal, Burks contends that the district court erred by denying her *Batson*[1] motion during jury selection.  She also argues that the district court clearly erred by imposing a two-level sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1 after finding that she had given perjured testimony at trial.  She asserts that her trial testimony did not meet the definition of perjury because it was too unbelievable to be considered material.  For the reasons set forth below, we affirm Burks's convictions and sentences.

I.

A grand jury returned an indictment charging Burks with (1) one count of mail fraud, in violation of 18 U.S.C. § 1341; (2) five counts of wire fraud, in violation of 18 U.S.C. § 1343; (3) one count of making false statements to an agency of the United States, in violation of 18 U.S.C. § 1001; and (4) five counts of theft from the United States, in violation of 18 U.S.C. § 641.  Burks entered a plea of not guilty and proceeded to trial.

Following jury selection, Burks made a motion under *Batson* challenging the government's use of its peremptory strikes.  She pointed out that the

---

[1]*Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed.2d 69 (1986).

government had used five of its six challenges to strike minority venire members. Specifically, she noted that the government struck: (1) Juror 1, who appeared to be an Indian female; (2) Juror 2, a black male; (3) Juror 4, a black female; (4) Juror 15, a black male; and (4) Juror 20, a black male.

In response, the government observed that it was not clear from Juror 1's name or appearance that she was a racial minority. The government also offered race-neutral reasons for striking the four African-American jurors. Specifically, the government noted that Juror 2 seemed uninterested in the proceedings and did not follow what was going on in jury selection or the reading of the indictment. Juror 4 also appeared uninterested, "seemed to avert attention" from the prosecution, and indicated that she had visited a cousin in prison. Juror 15 had a brother in jail and had been falsely accused of a domestic violence crime. Juror 20 stated that he had four children, but was only able to give the names and birth dates of three of them, and he seemed to be falling asleep in the back of the room.

Burks replied that the government's proffered reasons were pretextual. She pointed out that the venire members whom the government found to be uninterested had answered all of the questions posed to them. She also observed the government did not strike two white jurors who had visited relatives in jail. Finally, she pointed out that the prosecutor had not "followed up" on why Juror 20

had difficulty remembering the ages of his children.

Proceeding directly to the second and third steps of *Batson*, the court determined that the government's proffered explanations for its strikes were legitimate. The court agreed with the government that Jurors 2 and 4 were "unengaged in the process." The court also observed that Juror 4 gave very little information about herself. The court pointed out that the government struck a white female, Juror 24, who was unengaged in the process and who provided very little information about herself. Next, the court noted that Juror 20 had difficulty reading the questionnaire and responding to questions. Finally, the court concluded that the government had a legitimate ground for striking Juror 15 because he had been accused of domestic violence. Accordingly, the district court denied Burks's *Batson* motion. The district court noted for the record that the jury as selected contained three black females, a black male, an Asian female, and an Asian male. The court further observed that the alternate juror was a black female.

During trial, the government presented evidence that Burks submitted a claim for disaster relief to the Federal Emergency Management Agency ("FEMA") in September 2005. On her application form, Burks stated that she and her daughter had been living in New Orleans at the time of Hurricane Katrina, and

4

now needed disaster assistance. After receiving the application, FEMA wired five separate payments totaling over $11,000 into Burks's debit card account. In fact, Burks was living at Haven House, a shelter in Atlanta, when Hurricane Katrina struck New Orleans. When the director at Haven House asked Burks why she was receiving mail from FEMA, she responded that she was a government bidder. Between November 2005 and June 2006, Burks sent additional correspondence and requests for continued funding to FEMA. Those documents were faxed from an apartment complex where Burks used to live, from the home of Jamaine Gilbert, a man whom she was dating, and from a business in California where she was employed for a period of time.

Burks testified in her own defense. She explained that certain personal information had been stolen from her in 2002. Later, she discovered that someone had used her name to obtain a credit card and rent an apartment. She also noticed suspicious items on her credit report. On one occasion, she received a call from a credit agency concerning two checks that she did not write. Burks tried to report the identity theft in California, but the police told her that she would have to file the report in Atlanta because the theft occurred there. She sent an email to the Atlanta Police Department, but never received a response. Burks denied applying for or receiving disaster relief from FEMA.

On cross-examination, Burks denied speaking with the staff at Haven House about receiving mail from FEMA. She also acknowledged that the identity theft occurred before her daughter was born, so her daughter's information could not have been stolen. The jury found Burks guilty with respect to all 12 counts of the indictment.

The presentence investigation report recommended that Burks receive a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 because she had provided false testimony at trial. Burks objected to the obstruction of justice enhancement. At the sentencing hearing, the government argued that the enhancement was appropriate because Burks testified falsely when she denied submitting the applications to FEMA and when she suggested that an identity thief was responsible for the fraudulent applications. Burks responded that her testimony was truthful and that she should not be penalized for exercising her constitutional right to testify.

The district court explained that Burks "has a right to testify, but she doesn't have a right to lie, and that's what she did." The court found that Burks lied when she said that she had never applied for or received FEMA benefits. The court observed that, to accept Burks's testimony as true, one would have to believe that an unknown person stole her identity, submitted false claims to FEMA, and then

6

had the money deposited in Burks's account. The court explained, "That's not the way identity theft works. The whole purpose for stealing somebody's money is to get the money in your account, not the victim's. So her testimony or suggestion that this was all somebody stealing her identity is absurd and ridiculous and unbelievable." The court also concluded that Burks lied when she denied receiving mail from FEMA. Accordingly, the court overruled Burks's objection and imposed an obstruction of justice enhancement. The court sentenced Burks to a term of 12 months and one day in prison with respect to all twelve counts of conviction, with all of the sentences to run concurrently.

## II.

We review the district court's denial of a *Batson* motion *de novo*, but will reverse the district court's factual findings only if they are clearly erroneous. *United States v. Allen-Brown*, 243 F.3d 1293, 1296-97 (11th Cir. 2001). *Batson* holds that a party may not exercise a peremptory challenge against a juror solely on account of that juror's race. *Id.* at 1297. The district court must apply a three-step procedure in ruling on a *Batson* objection. *Id.* First, the objector must make a *prima facie* showing that the peremptory challenges were exercised on the basis of race. *Id.* Factors to consider include: (1) whether there has been a pattern of strikes against minority jurors; (2) whether the striking party's questions or

statements suggest a discriminatory purpose; (3) the racial composition of the remaining jurors; (4) the race of the defendant; and (5) the nature of the crime. *Allen-Brown*, 243 F.3d at 1297-98.

If the court finds that the objector has made a *prima facie* showing of discrimination, the burden shifts to the striking party to gave a race-neutral reason for its strikes. *Id.* at 1297. If the striking party is able to offer such reasons, the court must proceed to the third step, and determine whether the objecting party has carried its burden of proving purposeful discrimination. *Id.* "The objecting party may carry its burden by showing that the striking party's race-neutral reason is a mere pretext for discrimination." *United States v. Bernal-Benitez*, 594 F.3d 1303, 1312 (11th Cir.), *cert. denied*, 120 S.Ct. 2121, and *cert. denied*, 120 S.Ct. 2123 (2010). One way to demonstrate that the reason offered is a pretext is to show that it applies with equal force to venire members of another race who were not struck. *Miller-El v. Dretke*, 545 U.S. 231, 241, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005).

Here, regardless of whether Burks established a *prima facie* case of discrimination, she failed to prove that the government's reasons for striking the minority jurors were pretextual. On appeal, Burks only challenges the government's explanation that it struck Jurors 4 and 15 because they visited family

members in jail.  She points out that the government did not strike two white jurors who visited individuals in prison.  Even assuming that Burks has shown that particular reason to be pretextual, the government offered other race-neutral reasons for striking Jurors 4 and 15.  Specifically, the government explained that Juror 4 appeared uninterested in the proceedings, and that Juror 15 had been falsely accused of a domestic violence crime.  The district court, which was in the best position to judge the demeanor of the venire members, agreed with the government that Juror 4 was "unengaged in the process," and there is nothing in the record to suggest that the court's determination was clearly erroneous.   In addition, the fact that Juror 15 had been falsely accused of a crime was also a valid basis for exercising a peremptory challenge.

Burks does not argue on appeal that the government's non-discriminatory reasons for striking Jurors 2 and 20 were pretextual.  Even if she had raised that argument, there is nothing in the record to contradict the district court's findings that those two particular jurors appeared to be uninterested in the case.  Because Burks failed to meet her burden of showing that the government struck the minority venire members for race-related reasons, the district court properly denied her *Batson* motion.

### III.

When a district court imposes a sentencing enhancement for obstruction of justice, we review the district court's factual findings for clear error, and its application of the Sentencing Guidelines to those facts *de novo*. *United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006). Section 3C1.1 of the Sentencing Guidelines provides that a defendant should receive a two-level sentencing enhancement if he "willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing" of the offense of conviction. U.S.S.G. § 3C1.1. The commentary to this section lists perjury as an example of conduct that supports application of the enhancement. *Id.*, comment. (n.4(b)). For purposes of the obstruction of justice guideline, perjury is defined as the giving under oath of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993). The term "material" is defined as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n.6).

In this case, Burks testified under oath that she never submitted an application for disaster relief benefits to FEMA. She explained that she had been

the victim of identity theft, and implied that the identity thief must have been the one who submitted the fraudulent application. Had the jury believed this testimony, it would have found Burks not guilty of the charged offenses. Because this testimony, "if believed, would tend to influence or affect the issue under determination," it was material. *See* U.S.S.G. § 3C1.1, comment. (n.6).

Burks makes a novel argument that her testimony was so implausible that no fact-finder could possibly have accepted it. The definition of "material," however, focuses on whether the testimony would affect the outcome of the case "if believed," not whether the testimony is actually believable. *See* U.S.S.G. § 3C1.1, comment. (n.6). Thus, testimony can be material even if it is inherently implausible. Moreover, reading a believability or plausibility requirement into the definition of "material" would have the undesirable effect of encouraging defendants to give false testimony at trial, knowing that they would be able to avoid an obstruction of justice enhancement by arguing that their testimony was too fantastic to be believed. Thus, we reject Burks's argument that her testimony was not material because it was "too absurdly unbelievable." We conclude that the district court properly enhanced Burks's sentence by two levels for obstruction of justice.

Accordingly, we affirm Burks's convictions and sentences.

**AFFIRMED.**