**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-13264

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

STEVEN TODD ROSEBORO,

*Defendant-Appellant.*

————————————————

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 1:23-cr-00182-RAH-SMD-1

————————————————

Before NEWSOM, BRASHER, and MARCUS, Circuit Judges.

PER CURIAM:

Courtney Roseboro appeals his convictions for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and committing an offense while on release, in

violation of 18 U.S.C. § 3147.  On appeal, Roseboro argues that: (1) the district court erred in denying his motion challenging the composition of the jury venire as violating either the fair cross-section requirement of the Sixth Amendment or the principles of the Jury Selection and Service Act ("JSSA"); (2) the court erred by concluding that he failed to establish a prima facie case of discrimination from the government's use of its peremptory strikes; (3) the evidence at his trial was insufficient to support his § 922(g)(1) conviction; and (4) § 922(g)(1) is unconstitutional in violation of the Second Amendment.  After thorough review, we affirm.

## I.

We review de novo constitutional challenges to the jury selection process.  *United States v. Grisham*, 63 F.3d 1074, 1077 (11th Cir. 1995).  We review the denial of a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), for clear error.  *United States v. Robertson*, 736 F.3d 1317, 1324 (11th Cir. 2013).  However, we review errors of law in the application of *Batson* de novo.  *United States v. Allen-Brown*, 243 F.3d 1293, 1296 (11th Cir. 2001).  We also review de novo whether the evidence was sufficient to sustain a conviction.  *United States v. Davis*, 854 F.3d 1276, 1292 (11th Cir. 2017).

Finally, we review de novo challenges to the constitutionality of a statute.  *United States v. Dubois* (*Dubois II*), 139 F.4th 887, 890 (11th Cir. 2025), *cert. denied*, (U.S. Jan. 20, 2026) (No. 25-6281).  But when a constitutional claim is raised for the first time on appeal, we review for plain error.  *United States v. Hughes*, 840 F.3d 1368, 1385 (11th Cir. 2016).  To establish plain error, the defendant must

show (1) an error, (2) that is plain, and (3) that affected his substantial rights. *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007). If the defendant satisfies these conditions, we may exercise our discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Under the prior precedent rule, we are "bound to follow a prior panel's holding unless and until it is overruled or undermined to the point of abrogation by an opinion of the Supreme Court or of this Court sitting en banc." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019). We've "categorically reject[ed] any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time." *Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001).

## II.

First, we are unpersuaded by Roseboro's claim that the district court erred in denying his motion challenging the composition of the jury venire. The Sixth Amendment guarantees a criminal defendant the right to be tried by juries drawn from a fair cross-section of the community. *Grisham*, 63 F.3d at 1078. However, there is no requirement that the chosen jury mirror the community and reflect the various distinctive groups in the population. *United States v. Green*, 742 F.2d 609, 611 (11th Cir. 1984). To establish a prima facie case that a jury selection process does not produce a "fair cross-section" of the community, a defendant must show that: (1) the group alleged to be excluded is a distinctive group in the

community; (2) representation of the group in venires is not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation is due to systemic exclusion of the group in the jury-selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1978). Failure to establish any one of these elements results in the failure of the entire Sixth Amendment claim. *See United States v. Carmichael*, 560 F.3d 1270, 1280 (11th Cir. 2009).

To determine whether a distinctive group's representation is fair and reasonable, we compare the difference between the percentage of the distinctive group among the population eligible for jury service and the percentage of the distinctive group in the jury pool. *Id.* If the absolute disparity between these percentages is 10% or less, *Duren*'s second element is not met. *Grisham*, 63 F.3d at 1079. We compare the venire's community to the federal judicial district or division from which jurors are drawn. *Id.* at 1079–80.

The JSSA also protects the "right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Procedures for selecting names from these sources should "ensure the random selection of a fair cross section of the persons residing in the community." *Id.* § 1863(b)(3). The JSSA provides remedies only for "substantial failure[s] to comply" with its provisions. *Id.* § 1867(d). JSSA violations are substantial if they thwart one of the Act's foundational principles: "(1) random selection of juror names; (2) from a fair cross-section of the community; and (3)

use of objective criteria for determination of disqualifications, excuses, exemptions, and exclusions." *Carmichael*, 560 F.3d at 1277.

Notably, the same analysis used for Sixth Amendment fair cross-section violations applies to JSSA fair cross-section violations. *Id.* at 1278.  The randomness requirement "does not require statistical randomness but rather requires a system of selection that affords no room for impermissible discrimination against individuals or groups." *Id.* at 1277 (citation modified).  The objectivity requirement bans jury selection based on subjective standards that "result or are likely to result in discrimination, or which fail to produce juries representing a fair cross section of the community," including standards of "good character, approved integrity, sound judgment and fair education."  *Id.* at 1277–78 (citation modified). "[S]ubstantial" violations of the JSSA result in "a significant impact on the composition of an average jury." *United States v. Henderson*, 409 F.3d 1293, 1306 (11th Cir. 2005) (citation modified).

Here, Roseboro raises a violation of the Sixth Amendment based on his claim that the jury for his trial contained one black juror despite black people comprising 21.3% of the population of the Southern Division of the United States District Court for the Middle District of Alabama.  However, Roseboro did not meet his burden of showing a lack of fair and reasonable representation in his challenge to the composition of the jury venire because he did not show that the absolute disparity between the percentage of black people among the population eligible for jury service and the percentage of black people in the qualified jury pool was more than

10%.  *Duren*, 439 U.S. at 364; *Grisham*, 63 F.3d at 1078–79.  Instead, Roseboro's expert calculated an absolute disparity of 4.68% for the Middle District and 4.32% for the Southern Division.  And because Roseboro's claim failed at *Duren*'s second prong, we need not reach the third prong.  *Carmichael*, 560 F.3d at 1278.  Further, to the extent he argues the 10% absolute disparity rule should be overturned on policy grounds, we are bound by our prior panel precedent.  *Gillis*, 938 F.3d at 1198; *see Smith*, 236 F.3d at 1303.  Thus, Roseboro's Sixth Amendment challenge to the composition of the jury venire fails.

Nor did the district court err in determining that Roseboro failed to state a substantial violation of the JSSA.  Roseboro claims that the Middle District's selection process excluded inactive voters, relied on outdated census data in creating its master jury wheel, and failed to track prospective jurors at the divisional level.  But because, as we've explained, he did not establish a violation of the Sixth Amendment's fair cross-section requirement -- which is the same inquiry we use for JSSA's fair cross-section violations, *Carmichael*, 560 F.3d at 1278 -- he has not shown a violation that infringed upon the JSSA's fair cross-section requirement either.

None of Roseboro's claimed violations frustrate the other foundational principles of the JSSA.  As for the "random selection of juror names," the district's use of only active voters or its reliance on several-year-old census data in creating its master jury wheel do not inherently leave room for the district to exclude prospective jurors based on race.  Nor do these practices frustrate the

objectivity requirement.  As *Carmichael* makes it clear, the objectivity principle implicates the standards to which prospective jurors are held -- *i.e.*, "good character, approved integrity, sound judgment and fair education" -- not the venire process itself.  *See id.* at 1277–78.  And in any event, Roseboro has not provided evidence that the Middle District's procedures have "a significant impact on the composition of an average jury" in the Middle District, especially since the record contains no data about the makeup of any Middle District jury other than Roseboro's.  *Henderson*, 409 F.3d at 1306.  Accordingly, we affirm the denial of his JSSA claim.

## III.

We also find no merit to Roseboro's claim that the court erred by concluding that he failed to establish a prima facie case of discrimination from the government's use of peremptory strikes. In felony cases, the government has six peremptory challenges and the defendant has ten peremptory challenges.  Fed. R. Crim. P. 24(b)(2).  Peremptory challenges generally may be exercised on any ground, reasonable or otherwise, as long as the ground is not discriminatory.  *United States v. Hughes*, 840 F.3d 1368, 1382 (11th Cir. 2016).  The purposeful and deliberate denial of a member of a minority, however, to participate as a juror in the administration of justice, on account of race, violates the Equal Protection Clause. *Batson*, 476 U.S. at 84.  Thus, a defendant may challenge the government's use of peremptory challenges to establish purposeful racial discrimination in the selection of a jury.  *Id.* at 97.

*Batson* establishes a burden-shifting approach to determine whether peremptory strikes stemmed from racial animus. *Id.* at 96–98. First, the defendant must establish a prima facie case by producing evidence sufficient to permit the trial judge, based on all relevant circumstances, to infer that discrimination occurred. This inference may be drawn in two situations -- when there is a "pattern" of strikes against venire members of one race, or there are questions or statements during venire or while exercising challenges that suggest a discriminatory purpose. *Id.* at 97. Once the defendant makes a prima facie showing, the burden shifts to the government to come forward with a neutral explanation for challenging black jurors. *Batson*, 476 U.S. at 97.

In reviewing a *Batson* ruling, we give great deference to the district court's finding as to the existence of a prima facie case. *Allen-Brown*, 243 F.3d at 1296. We've warned that "the mere fact of striking a juror or a set of jurors of a particular race does not necessarily create an inference of racial discrimination" sufficient to sustain a prima facie case. *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1044 (11th Cir. 2005) (citation modified). The pure numbers of those struck of a certain race "takes on meaning *only* when coupled with other information such as the racial composition of the venire, the race of others struck, or the voir dire answers of those who were struck compared to the answers of those who were not struck." *Id.* (citation modified). However, "an inference of discrimination based on the number of jurors of a particular race may arise where there is a substantial disparity between the percentage of jurors of one race struck and the percentage of their representation

on the jury." *Cent. Ala. Fair Hous. Ctr. v. Lowder*, 236 F.3d 629, 637 (11th Cir. 2000).  Similarly, where one party strikes all or almost all the members of one race on a venire, this may be enough to establish a prima facie case.  *Id.*  However, we held that a defendant failed to make a *Batson* prima facie showing when the government used most of its strikes against black jurors, but it chose not to use its two additional peremptory challenges to exclude black jurors, and the jury ultimately included three black jurors and one black alternate.  *United States v. Campa*, 529 F.3d 980, 998 (11th Cir. 2008).

Here, the district court correctly found that Roseboro did not make a *Batson* prima facie showing.  The evidence Roseboro presented to establish a pattern of discrimination was the government's use of two of its four utilized strikes against black people and its striking of two of the three black venirepersons, leaving just one black juror.  But the record reflects that the government used only four of its six available peremptory challenges, and left one black juror on Roseboro's jury.  Thus, as in *Campa*, the presence of a black juror and the government's decision not to use all its strikes indicate that discrimination did not occur.  *Id.*  Nor has Roseboro pointed to any government questions or statements during jury selection that suggest a discriminatory purpose behind the strikes. *Batson*, 476 U.S. at 97.  Affording, as we must, deference to the district court's prima facie ruling, we affirm the court's finding that Roseboro failed to establish an inference of racial discrimination. *Ochoa-Vasquez*, 428 F.3d at 1044.

**IV.**

Next, we are unconvinced by Roseboro's argument that the evidence at his trial was insufficient to support his § 922(g)(1) conviction. The denial of a "motion[] for a judgment of acquittal will be upheld if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000). We must view the facts, and draw all reasonable inferences therefrom, in the light most favorable to the government. *United States v. Hansen*, 262 F.3d 1217, 1236 (11th Cir. 2001). We will not disturb a jury's determination regarding the credibility of witnesses at trial. *United States v. Emmanuel*, 565 F.3d 1324, 1334 (11th Cir. 2009).

"Because a jury is free to choose among the reasonable constructions of the evidence, it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Godwin*, 765 F.3d 1306, 1320 (11th Cir. 2014) (citation modified). Thus, we must sustain a verdict where there is a reasonable basis in the record for it. *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). A judgment of acquittal is warranted only where no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* It is not enough for a defendant to put forth a reasonable hypothesis of innocence, as the issue is not whether the jury reasonably could have acquitted, but whether it reasonably could have found the defendant guilty. *United States v. Jiminez*, 564 F.3d 1280, 1285 (11th Cir. 2009).

The test for sufficiency of the evidence is identical whether the evidence is direct or circumstantial. *United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015). Circumstantial evidence can establish a defendant's guilt. *United States v. Mapson*, 96 F.4th 1323, 1336 (11th Cir. 2024). When the government relies on circumstantial evidence to prove an offense element, reasonable inferences from the evidence must support the conviction, not speculation. *Id.*

It is unlawful for any person convicted of a crime punishable by more than one year of imprisonment, to possess, in or affecting commerce, any firearm or ammunition. 18 U.S.C. § 922(g)(1). The elements of possession of a firearm by a felon are: (1) the defendant knowingly was a felon; (2) the defendant knew he was barred from possessing a firearm; (3) the defendant knowingly possessed a firearm; and (4) the firearm affected or was in interstate commerce. *United States v. Elysee*, 993 F.3d 1309, 1345 (11th Cir. 2021).

Possession of a firearm can be actual or constructive. *United States v. Ochoa*, 941 F.3d 1074, 1104 (11th Cir. 2019). Actual possession exists if the defendant had physical possession or personal dominion over the object at issue. *Id.* Constructive possession may be exclusive or shared with others. *United States v. Flanders*, 752 F.3d 1317, 1332 (11th Cir. 2014). Constructive possession exists where the defendant exercises ownership, dominion, or control over the firearm, or has the power and intention to exercise dominion or control. *United States v. Gunn*, 369 F.3d 1229, 1235 (11th Cir. 2004). A defendant's mere presence in the area of an object or awareness of its location is not sufficient to establish possession.

*United States v. Green*, 873 F.3d 846, 852–53 (11th Cir. 2017). A defendant has constructive possession of ammunition or a firearm if he (1) is aware of or knows of the firearm's or ammunition's presence and (2) has the ability and intent to exercise control over that firearm or ammunition. *Id.* at 852. We reversed a § 922(g)(1) conviction for the backseat passenger in a vehicle where its tailgate contained concealed drugs and a handgun, because even if he knew of the drug's or gun's presence, no evidence indicated he constructively possessed either, since he did not own or control the vehicle. *United States v. Leonard*, 138 F.3d 906, 909–10 (11th Cir. 1998).

Here, Roseboro's convictions -- possession of a firearm and ammunition by a convicted felon and committing an offense while on release -- arose out of a traffic stop, in which law enforcement officers found ammunition and a pistol in a backpack in the car Roseboro was driving. He claims that the evidence was insufficient to support his convictions because LaQuenna Lewis, a female passenger in his car, testified at trial that the 9mm pistol and box of ammunition belonged to her and she provided evidence of her ownership of the handgun in the form of a bill of sale.

The record reflects, however, that the court did not err in denying Roseboro's motions for a judgment of acquittal because the evidence was sufficient for a jury to reasonably find that he knowingly possessed ammunition and a pistol. As for the first element of constructive possession -- knowledge -- the government presented evidence that letters with Roseboro's name were found in the backpack next to the pistol and he admitted he packed the

backpack personally, which was sufficient to support a reasonable jury finding that he knew of the firearm's presence in the backpack. Similarly, the box of ammunition was found in the backpack amongst electronic disc jockey equipment, and Roseboro admitted during his post-arrest interview that he packed his equipment into the backpack. These same facts provided a sufficient basis for the jury to infer the second element of constructive possession -- his intent to exercise future control over the backpack and its contents. And even if his conviction was supported entirely by circumstantial evidence, it is sufficient to establish guilt. *Martin*, 803 F.3d at 587.

Moreover, even if Lewis testified that the 9mm pistol and box of ammunition belonged to her and provided a bill of sale to this effect, her mere ownership of the pistol did not in and of itself show that Roseboro did not knowingly possess it. *Flanders*, 752 F.3d at 1332. Further, Lewis's trial testimony was contradicted by statements she made to officers at the scene of the arrest, when she expressed surprise that there was a 9mm pistol in the backpack and denied ownership of any gun besides a .380 pistol found in the car's center console. To the extent the jury afforded more weight to Lewis's roadside statements than her trial testimony, this is a credibility determination we will not disturb. *Emmanuel*, 565 F.3d at 1334. On this record, it was reasonable for the jury to conclude that Roseboro both knew of the firearm in the backpack and intended to possess it at some future point, and we affirm.

## V.

14　　　　　　　　　　　Opinion of the Court　　　　　　　24-13264

Finally, we reject Roseboro's claim that his § 922(g)(1) conviction should be vacated because the statute is unconstitutional under the Second Amendment. The Second Amendment states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. As we've discussed, it is a crime for any person convicted of a felony to possess firearms or ammunition. 18 U.S.C. § 922(g)(1).

In 2008, the Supreme Court held that the District of Columbia's total ban on handgun possession, including possession in the home, violated the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 574–76, 628, 635 (2008). However, the Court acknowledged that the Second Amendment right to keep and bear arms was "not unlimited," emphasizing that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id*. at 626. In a footnote, the Supreme Court labeled these restrictions as "presumptively lawful." *Id*. at 627 n.26. Following *Heller*, the courts of appeals largely adopted a two-step framework for Second Amendment challenges in which they, first, considered whether a law regulated activity within the scope of the Amendment based on its original historical meaning and, second, applied a means-end scrutiny test to determine the law's validity. *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 18–19 (2022) (describing the typical approach of the courts of appeals).

In *Rozier*, decided between *Heller* and *Bruen*, we relied on *Heller* in holding that § 922(g)(1) was constitutional, "even if a felon possesses a firearm purely for self-defense." *United States v. Rozier*, 598 F.3d 768, 770 (11th Cir. 2010). Our *Rozier* decision did not rely on means-end scrutiny to conclude that § 922(g)(1) was constitutional, but rather, recognized that prohibiting felons from possessing firearms was a "presumptively lawful longstanding prohibition." *Id*. at 771 (citation modified). We highlighted "that nothing in [*Heller*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which "suggest[ed] that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Id*. (quoting *Heller*, 554 U.S. at 626). We concluded that Rozier's purpose for possessing a firearm, and the fact that the firearm was constrained to his home, was immaterial because felons as a class could be excluded from firearm possession. *Id*.

In *Bruen*, the Supreme Court reversed the dismissal of a civil suit brought under 42 U.S.C. § 1983 by applicants who had been denied unrestricted licenses to carry a handgun in public. *See* 597 U.S. at 8–16, 31. Those individuals challenged New York regulations that required all citizens to demonstrate "proper cause" to obtain concealed carry licenses. *Id*. The Supreme Court found the New York regulations to violate the Second and Fourteenth Amendment and explained that relying on a means-end analysis in the Second Amendment context was inconsistent with "*Heller*'s methodology [that] centered on constitutional text and history."

*Id.* at 16–24. The Supreme Court announced the appropriate standard for Second Amendment analysis: (1) "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"; and (2) if the conduct is presumptively protected, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. In *Bruen*, as it did in *Heller*, the Supreme Court referenced the Second Amendment rights of "law-abiding, responsible citizens." *Id.* at 26, 38 n.9, 70; *Heller*, 554 U.S. at 635.

Thereafter, we rejected a defendant's Second Amendment challenge to § 922(g)(1) under *Bruen* on the grounds that *Bruen* did not abrogate *Rozier*, which relied on *Heller*, and that we remained bound by *Rozier*. *United States v. Dubois (Dubois I)*, 94 F.4th 1284, 1291–93 (11th Cir. 2024), *cert. granted and judgment vacated*, 145 S. Ct. 1041 (2025), *and reinstated by*, *Dubois II*, 139 F.4th at 889.

Then, in June 2024, the Supreme Court held that § 922(g)(8), a different subsection of the statute that prohibits firearm possession by individuals subject to domestic violence restraining orders, was constitutional because the law comported with the principles underlying the Second Amendment. *United States v. Rahimi*, 602 U.S. 680, 693–700 (2024). In reaching that conclusion, the Supreme Court explained that "some courts [had] misunderstood" its clarifications to the second step of the framework and that *Bruen* does not require a regulation to have a "historical twin." *Id.* at 691–92 (quoting *Bruen*, 597 U.S. at 30). The Supreme Court noted that the

right to bear arms "was never thought to sweep indiscriminately" and extensively detailed the historical tradition of firearm regulations, including the prohibition of classes of individuals from firearm ownership. *Id.* at 691, 693–98. It again said that prohibitions on felons' possession of firearms are "presumptively lawful." *Id.* at 699 (quoting *Heller*, 554 U.S. at 626–27). It also explained that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *Id.* at 700. The Supreme Court added that § 922(g)(8) was constitutional as applied to Rahimi because the restraining order to which he was subject included a finding that he posed "a credible threat to the physical safety" of another, and the government provided "ample evidence" that the Second Amendment permitted "the disarmament of individuals who pose a credible threat to the physical safety of others." *Id.* at 689, 693 (citation modified).

In light of its decision in *Rahimi*, the Supreme Court vacated and remanded *Dubois I* for reconsideration. *Dubois*, 145 S. Ct. at 1041. On remand, we concluded that *Rahimi* did not abrogate our "holding in *Rozier* that section 922(g)(1) is constitutional under the Second Amendment" and reinstated our previous opinion. *Dubois II*, 139 F.4th at 889. In our justification, we explained, in part, that "*Rahimi* continued to rely on *Heller*" and that "*Rahimi* also did not abrogate *Rozier*." *Id.* at 892–93. We concluded that we would "require clearer instruction from the Supreme Court before we may reconsider the constitutionality of section 922(g)(1)," so *Rozier* continued to bind us. *Id.* at 894.

Here, we review Roseboro's challenge to the constitutionality of § 922(g)(1) only for plain error because he raises the argument for the first time on appeal, and we can find none.  Our binding precedent in *Rozier* forecloses Roseboro's argument that § 922(g)(1) is unconstitutional.  *Rozier*, 598 F.3d at 770–71.  We reaffirmed in *Dubois II* that neither *Bruen* nor *Rahimi* had abrogated *Rozier*. *Dubois II*, 139 F.4th at 891–94.  In fact, Roseboro conceded that his argument about the constitutionality of § 922(g)(1) was foreclosed by *Dubois II*.  And even if *Dubois II* and *Rozier* were wrongly decided, they are still binding on us under the prior-panel-precedent rule, since neither this Court nor the Supreme Court have overruled or abrogated them.  *Gillis*, 938 F.3d at 1198; *Smith*, 236 F.3d at 1303.  Accordingly, we affirm Roseboro's conviction under § 922(g)(1) as constitutional under the Second Amendment.

**AFFIRMED.**